IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN WARREN WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-0560-CV-W-GAF-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

John Warren Williams filed an application seeking disability insurance benefits under Title II of the Social Security Act ("the Act") 42 U.S.C. §§ 401, *et seq.*, as well as an application seeking supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*. Williams' applications were denied at the initial determination stage of administrative review.

On January 25, 2007, following a hearing, an administrative law judge, the Honorable Christine A. Cooke ("ALJ") rendered a decision in which she found that Williams was not under a "disability" as defined in Titles II and XVI at any time when he met the earnings requirements of the law, or at any time through the date of the decision. On July 24, 2008, the Appeals Council of the Social Security Administration denied Williams' request for review. Thus, the January 25, 2007 decision of the ALJ stands as the final decision of the Commissioner subject to review.

The standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a

preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). Evidence that both supports and detracts from the Commissioner's decision should be considered, and an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Finch*, 547 F.3d at 935. A court should disturb the ALJ's decision only if it falls outside the available "zone of choice" and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the fact finder in the first instance. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). The Eighth Circuit has further noted that a court should "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

To establish entitlement to disability benefits, Williams must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 20 C.F.R. §§ 404.1505, 416.905. The Supreme Court in *Barnhart v. Walton*, 535 U.S. 212, 218-20, 122 S.Ct. 1265, 1270 (2002), upheld the Commissioner's interpretation of this statutory definition which requires that the disability, and not only the impairment, must have existed or be expected to exist for 12 months.[1]

For entitlement to disability insurance benefits under Title II of the Act, Williams had the additional burden of showing that he was disabled as defined by the Act prior to the expiration of his insured status on June 30, 2006. *Pyland v. Apfel*, 149 F.3d 873, 876-77 (8th Cir. 1998);

---

[1] Upon review of the record and the law, the Defendant's position is found to be persuasive. Much of the Defendant's brief is adopted without quotation designated.

*Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). It is not enough that the impairments existed before the date Williams' insured status expired; those impairments must have been disabling at that time. *Lopez v. Bowen*, 806 F.2d 632, 633 (5th Cir. 1986). Thus, the relevant period for the Court's consideration of Williams' disability insurance benefits application under Title II of the Act is December 6, 2003 through June 30, 2006.

The ALJ found that Williams had severe alcohol addiction disorder, alcohol-induced depressive disorder, and status post pelvic fracture with some residual limitation of motion and pain. When considering the effects of drug abuse and alcoholism ("DA&A"), the ALJ determined that Williams' impairments met the requirements of 20 C.F.R. part 404, subpart P, appendix 1, Listing § 12.09. As a result, when considering the effects of DA&A, the ALJ found that Williams was disabled. When not considering the effects of DA&A, however, the ALJ concluded that Williams' remaining impairments were severe, but did not meet the requirements of any listed impairment contained in 20 C.F.R. part 404, subpart P, appendix 1, Listing of Impairments. Thus, the ALJ found that when not abusing drugs or alcohol, Williams retained the residual functional capacity ("RFC") to perform other jobs existing in significant numbers in the national economy. The ALJ therefore concluded that Williams' substance abuse was a material factor contributing to his disability, as Williams would not be disabled if he stopped abusing substances. Consequently, the ALJ found Williams was not disabled.

Williams argues on appeal that the ALJ did not apply the correct legal standard to assess his RFC. In determining Williams' RFC, the ALJ evaluated the credibility of Williams' subjective complaints and determined Williams had an RFC – when not abusing alcohol – that was consistent with the ability to perform other work that exists in significant numbers in the

3

national economy.  Credibility questions concerning a claimant's subjective testimony are matters for the Commissioner's discretion.  *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996).  The primary question is not whether Williams actually experiences the subjective complaints alleged, but whether those symptoms are credible to the extent that they prevent him from performing substantial gainful activity.  *McGinnis v. Chater*, 74 F.3d 873, 874 (8th Cir. 1996); *Pickner v. Sullivan*, 985 F.2d 401, 404 (8th Cir. 1993).  Where an ALJ specifically discredits a claimant's testimony for stated reasons, a reviewing court normally must defer to the ALJ's determination of credibility.  *Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991).

  In concluding that Williams' testimony was not fully credible, the ALJ's consideration of the subjective aspects of his complaints comported with the Commissioner's regulations at 20 C.F.R. §§ 404.1529 and 416.929, and the factors for evaluating subjective complaints as set forth in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984).  The Commissioner may also discredit subjective complaints if there are inconsistencies in the evidence on the record as a whole.  *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996); *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 196).  The ALJ's credibility determination is supported by substantial evidence in the record, as the ALJ found Williams' testimony to be "essentially credible and consistent with the record."

  The ALJ determined that Williams' "primary problem is his alcohol abuse which has resulted in multiple inpatient admissions" and discussed the medical evidence of record in regard to such.  The ALJ noted the medical records are replete with diagnoses of alcohol abuse and statements from Williams regarding his daily use of alcohol or periodic use of marijuana.  Progress notes also contain numerous statements that Williams was intoxicated or smelled of

4

alcohol at the time of hospitalizations or examinations. Health care professionals have repeatedly urged Williams to stop drinking and referred him to alcohol treatment programs, group addiction therapy, and Alcoholics Anonymous.

The medical evidence of record shows that in December 2003, simultaneous with Williams' alleged onset date, Williams was involved in an automobile accident and was admitted to the hospital in an intoxicated state. In January 2005, Williams was admitted to the hospital for alcohol withdrawal and dependence with alcoholic intoxication. Williams was also hospitalized in May 2005, based primarily on alcohol dependence and withdrawal symptoms.

Williams has been diagnosed with an alcohol or substance-induced mood or depressive disorder and there is no evidence that such would exist independently of alcohol. Williams testified that he had depression that caused mood swings, difficulty getting along with others, and took risks. Notations from Michael G. Smith, M.D., Williams' psychiatrist, show at times when Williams alleged he was remaining sober, he was not in immediate psychiatric distress nor did he require treatment other than brief supportive counseling. At times when Williams was drinking, Dr. Smith advised Williams to stop "due to alcohol's deleterious effect on mood and health," and Williams required hospitalization for treatment. In September 2004, Dr. Smith urged Williams to quit drinking in view of his "mood problems related to drinking." In November 2004, Dr. Smith advised Williams that his antidepressant medication would not be helpful if he was using alcohol. As discussed in greater detail below, the ALJ's determination that Williams' substance abuse was a material factor to the determination of disability in this case is supported by substantial evidence.

5

Williams also is status post pelvic fracture that was sustained on December 4, 2003, when he was hit as an intoxicated pedestrian by a motor vehicle. Williams underwent surgery to repair his pelvic fracture. Williams completed physical and occupational therapy and by June 2004, was ambulatory without an assistive device. In August 2004, an orthopedist stated Williams' fracture was healed and he was instructed to follow up on a yearly basis. Williams was discharged from orthopedic care in March 2005. An examination at the time revealed Williams walked with a slight limp, but had full strength bilaterally in the upper and lower extremities, good range of motion of the hip without crepitus, and that Williams' extremities were neurovascularly intact.

The orthopedist stated Williams would have episodic hip pain, but that he should be able to do occupations that did not excessively load the right hip. Follow-up x-rays of the pelvis have shown all orthopedic hardware was in place and an x-ray of the hip joint showed it was normal with no significant changes.

The federal regulations state that although an ALJ may not reject a claimant's subjective complaints based solely on the objective medical evidence, such evidence is a useful indicator in making conclusions about the effect of symptoms, such as pain, on the claimant's ability to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). Moreover, Eighth Circuit case law holds that the absence of an objective medical basis to support the degree of a claimant's subjective complaints is an important factor in evaluating the credibility of the claimant's testimony and complaints. *Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991); *Edwards v. Sec'y of Health & Human Services,* 809 F.2d 506, 508 (8th Cir. 1987).

Williams testified that he did not take any prescription medication, but only used ibuprofen for control of his residual pain following his pelvic fracture. In January of 2005, Williams mentioned pelvic and right hip pain to a nurse, but stated he did not take pain medication. A lack of strong pain medication is inconsistent with subjective complaints of disabling pain. *Hall v. Chater*, 109 F.3d 1255, 1258 (8th Cir. 1997); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996).

Williams has been non-compliant with treatment on numerous occasions. On many occasions, Williams has refused the advice of medical professionals to be hospitalized or obtain treatment for alcoholism, stating he could stop using alcohol of his own volition or that he knew how to handle his drinking. Williams has been noted to be poorly motivated or to have a poor prognosis for treatment of alcoholism. Williams has also been non-compliant with the use of prescribed medications. Noncompliance with treatment is a proper factor in the credibility analysis. *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001); *see also Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006).

At times, medical professionals have recommended that Williams contact vocational rehabilitation for assistance obtaining a job, but Williams has denied interest. Williams told his social worker that he was not interested in working pending the outcome of his social security disability appeal. The Eighth Circuit has held that an ALJ may discount a claimant's subjective complaints for, among other reasons, that he appeared to be motivated to qualify for disability benefits. *Eickelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

In the case at hand, the ALJ considered all of Williams' impairments and included them, to the extent they were credible, in the RFC finding and hypothetical question to the vocational

expert. The ALJ articulated the inconsistencies upon which he relied in discrediting Williams' testimony regarding his subjective complaints and substantial evidence in the record as a whole supports this credibility finding.

Williams argues that because the ALJ did not point out any evidence in support of the limitations that would remain if he stopped abusing alcohol, the ALJ's conclusion that DA&A was a material factor contributing to Williams' disability was unsupported by the medical evidence of record.

Legislation was signed into law on March 29, 1996, which eliminates alcoholism or drug addiction as a basis for obtaining disability insurance benefits. Contract with America Advancement Act of 1996, PUB. L. NO. 104-121, 110 STAT. 847 (amending 42 U.S.C. § 423(d)(2)). This legislation provides:

> An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

PUB. L. NO. 104-121 § 105(A)(1). *See also* PUB. L. NO. 104-121 § 105(B)(1) (amending SSI disability benefits under Title XVI to the same extent). Drug addiction or alcoholism is "material" if the individual would not still be found disabled if alcohol or drug use were to cease. 20 C.F.R. §§ 404.1435, 416.935.

In this case, the ALJ determined Williams was disabled when considering the effects of DA&A. Williams' symptoms resulted in marked difficulties maintaining social functioning and marked difficulties with concentration, persistence, and pace so that he met the requirements of listings 12.09 of the Listings of Impairments. 20 C.F.R. part 404, subpart P, appendix 1, § 12.09. However, the ALJ determined that absent alcohol, Williams maintained the RFC to lift and carry

8

20 pounds occasionally and ten pounds frequently; sit, stand, or walk for six hours in an eight hour day; frequently stoop, occasionally climb stairs or ramps, balance, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolding; and never work at unprotected heights. Williams could frequently understand, remember, and carry out simple instructions of one to three steps frequently, occasionally set realistic goals or make plans independently of others, and could never understand, remember, or carry out detailed instructions.

The ALJ determined that Williams' substance abuse was a material factor contributing to his disability, as Williams would not be disabled if he stopped abusing substances. Williams argues that the ALJ's determination that his mental condition would improve if he were not abusing alcohol was based only on speculation. Williams cites POMS DI 27020.001 in support of his proposition, which states that a disability determination or hearing decision must be set forth carefully and that, "reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence." Contrary to Williams' argument, however, the ALJ did not speculate, but determined, that the medical evidence of record showed Williams' condition improved when not using alcohol. The ALJ also made this determination based on Williams' own "essentially credible" testimony regarding his use of alcohol that was consistent with the evidence of record.

The ALJ determined, based on the medical evidence of record, that Williams' "mood disorder and depression are directly attributable to his alcohol abuse." The ALJ noted that Williams was placed at a rehabilitation center subsequent to his motor vehicle accident. Because he was not using alcohol, Williams' condition was stabilized and he functioned fairly well mentally, both during his time in the hospital and at the rehabilitation center. Williams had a

9

congruent affect, was in good spirits, and had a significantly improved mood from the time of admission.  While still hospitalized or in the rehabilitation center, Williams' major depression was noted to be in partial remission or stable.  Susan L. Siegfried, M.D., stated in Williams' discharge summary in December 2003, that his "mood improved significantly from the time of admission" and that Williams' "symptoms of mood most likely appear to be secondary to ongoing substance abuse."  In March and April 2004, Dr. Smith stated Williams' major depressive disorder and alcoholism were in remission.  However, Williams began drinking alcohol again on a daily basis and declining detoxification and rehabilitation in August 2004, at approximately the same time he moved out of rehabilitative care and into his own apartment.  Williams was hospitalized in January 2005 for alcohol withdrawal and dependence with alcoholic intoxication, at which time the physician stated Williams' "has been drinking heavily and has had worsening depression for the past two weeks."  Mental health professionals have commented that they would monitor or assess Williams' mood or symptoms of depression after he had undergone alcohol withdrawal.

The ALJ also determined that Williams' "mood disorder and depression are directly attributable to his alcohol abuse" based on Williams' own "essentially credible" testimony.  Williams testified that he was an alcoholic who drank for two to three days in a row and then drank nothing for several days following.  Williams stated he also used marijuana occasionally.

The ALJ noted that a reviewing State agency psychologist did not believe Williams had any severe mental impairment absent consideration of his alcohol addiction disorder.  Douglas B. Vaughan, Ph.D., opined that Williams' depressive mood disorder was related to his drinking of one to one and one-half liters of vodka per day and occasional marijuana use.  Dr. Vaughan

stated the record showed Williams was not significant limited, "especially when he does not drink."

Dr. Vaughan opined Williams had a mild restriction of activities of daily living, mild difficulties maintaining social functioning, and mild difficulties maintaining concentration, persistence, or pace. With regard to Williams' activities of daily living, the State agency physician noted and the record of evidence shows Williams was able to cook, do laundry, wash dishes, shop, manage money, and read. Williams testified he spent his days running errands. With regard to Williams' social functioning, the State agency physician noted and the record of evidence shows Williams used public transportation, often went to Westport[2] for entertainment or dinner, regularly attended and enjoyed social activities as part of recreation therapy, attended group addiction therapy sessions, and denied problems relating with others. Williams testified he spent his days going to meetings and volunteering in the community and stated he was "better than most people" at coping with stress. Dr. Vaughan and the evidence of record also showed Williams was able to follow instructions and pay attention and Williams stated he enjoyed reading the newspaper.

Ratings on the Psychiatric Review Technique Form ("PRTF") of "none" or "mild" in activities of daily living, social functioning, and concentration, persistence, or pace, and none if deterioration or decompensation in work or work-like settings, generally indicate that the impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The ALJ's determination that Williams' substance abuse was a material factor contributing to his disability

---

[2]An area of Kansas City with a concentration of bars and restaurants.

is supported by substantial evidence and is consistent with the requirements of Pub. L. No. 104-121.

After engaging in the foregoing credibility analysis, the ALJ incorporated into Williams' RFC finding those impairments and restrictions found credible if he stopped substance use. When posed with the ALJ's RFC findings in a hypothetical question, the vocational expert responded that such a person could perform light, unskilled work as a fast food worker, cafeteria attendant, mail clerk. The question was properly formulated, so the expert's testimony that Williams could perform other work constitutes substantial evidence supporting the Commissioner's decision. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996); *Miller v. Shalala*, 8 F.3d 611, 613-14 (8th Cir. 1993)

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: May 21, 2009